108 F.3d 337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William S. CUMMINGS, Plaintiff-Appellant,
v.
Samuel A. LEWIS, Director; Sam Sublett, Warden; Theodore
Jolley, Facility Health Administrator; Tony
Lopez, Grievance Coordinator,
Defendants-Appellees.
 No. 95-17197.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 8, 1996.*
Decided Feb. 12, 1997.
 
 Before: FLETCHER, FARRIS, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 William S. Cummings, a prisoner proceeding pro se, appeals from a grant of summary judgment against him in his suit under 42 U.S.C. § 1983. Because Cummings was never advised of the need to submit opposing evidence to ward off summary judgment and because, in any event, Cummings established genuine issues of material fact with respect to defendants Lewis, Jolley, and Lopez, we reverse.
 
 I. Background
 
 3
 Cummings suffered what would eventually be diagnosed as a stroke while he was incarcerated in the Arizona State Prison Complex in Tucson in December 1990. When he returned from a brief stay at a local hospital, prison medical officials noted that he seemed physically deteriorated, was having trouble articulating words, and could not understand some concepts. Over the next ten days they reported that he could neither think nor speak clearly, had trouble walking or maintaining his balance, and struggled to use his right arm. After several weeks, they concluded that Cummings did not need "occupational" treatment and observed that, although he walked with a walker, he refused "gait training" because of pain in his right foot. He was then returned to the general prison population.
 
 
 4
 Cummings requested rehabilitative speech therapy in May 1991, but prison officials denied his request. The record shows that Cummings made at least one other request for speech and physical therapy in late February 1993, and Cummings contends that he made numerous requests for rehabilitative treatment between May 1991 and February 1993. In April 1993, after Cummings had filed this suit, prison officials began to provide rehabilitative treatment.
 
 
 5
 Cummings filed this § 1983 suit against four prison officials in March 1993, proceeding pro se. He alleged that they had been deliberately indifferent to his serious medical need for post-stroke rehabilitative treatment. After some discovery, defendants moved for summary judgment. The district court granted the motion, finding it "clear from the uncontradicted affidavit of Theodore B. Jolley that plaintiff was treated for his medical condition as soon as it occurred on December 4, 1990. Thus, there are no genuine issues of material fact...." Cummings appealed.
 
 II. Failure to Advise
 
 6
 A district court cannot grant summary judgment against a pro se prisoner litigant unless it has advised him of the requirements of the summary judgment rule, Fed.R.Civ.P. 56. Anderson v. Angelone, 86 F.3d 932, 935 (9th Cir.1996); Arreola v. Mangaong, 65 F.3d 801, 802 (9th Cir.1995) (per curiam); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.1988). Thus, district courts must explain to pro se prisoner litigants that they must submit responsive evidence to ward off summary judgment. Anderson, 86 F.3d at 935. Failure to so advise makes summary judgment inappropriate. Id. Here, the district court did not advise Cummings of the requirements of the summary judgment rule--that he would have to submit responsive evidence in order to avoid summary judgment. We, therefore, must reverse as to all defendants.[1]
 
 III. Genuine Issues of Material Fact
 
 7
 We review the merits of a grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Viewing the evidence in the light most favorable to the nonmoving party, we consider whether there were any genuine issues of material fact. Id.
 
 
 8
 To establish a genuine issue of material fact a plaintiff must point to significant probative evidence to support each element of his claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Cummings' § 1983 claim arises under the Eighth Amendment, which requires that prison officials attend to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Because mere negligence does not violate the Eighth Amendment, id. at 105-06, Eighth Amendment plaintiffs must show that prison officials acted with at least "deliberate indifference," id. at 104--that is, that they had actual, subjective awareness of a risk of harm, yet failed to take proper steps to prevent it. Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994). Thus, to establish a genuine issue of material fact in a medical-need case, a prisoner must point to probative evidence in the record that shows (1) a serious medical need, and (2) deliberate indifference (awareness of need and failure to act). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir.1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, No. 93-55917, 1997 WL 1218 (9th Cir. Jan. 2, 1997). Cummings did so.
 
 
 9
 First, the record contains probative evidence that Cummings had a serious medical need. A serious medical need exists if the prisoner has suffered "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment[,] ... a medical condition that significantly affects an individual's daily activities[,] ... [or] chronic and substantial pain." Id. at 1059-60. Defendant Jolley's affidavit states that Cummings was physically debilitated and mentally impaired during the months that followed his stroke; that he still needed a walker when he was released from medical care in March 1991; that he requested rehabilitation in May 1991; that he again requested rehabilitation in February 1993; and that he was found to need rehabilitation in May 1993. True, there is little evidence about Cummings' condition between May 1991 and February 1993: but a reasonable jury might conclude that a stroke victim who walked with a walker in March 1991, requested rehabilitation in May 1991, repeated the request in February 1993, and was found to need rehabilitation in May 1993, was likely to have been suffering the debilitating effects of the stroke throughout. It might also find that those effects were "important" and "affected [his] daily activities," and gave rise to a need for rehabilitation. See Durmer v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir.1993) (assuming after-effects of stroke can be medical condition producing serious medical needs).
 
 
 10
 Second, the record contains probative evidence that defendants were deliberately indifferent to Cummings' medical needs. Defendant Jolley's affidavit shows that the prison medical log contains several entries from December 1990 to February 1991 describing Cummings' dramatic post-stroke disabilities, including his difficulties walking and speaking. The log also reports that Cummings made requests for therapy in 1991 and 1993, and that those requests were denied. Again, while the evidence leaves an extended gap, a jury might find that prison officials confronted with a visibly debilitated, known stroke victim, and occasionally confronted with treatment requests from that victim, were on notice of that victim's condition and acted with deliberate indifference by delaying treatment.
 
 
 11
 Only with respect to defendant Sublett did Cummings fail to offer evidence of deliberate indifference: Cummings rested Sublett's liability entirely on a "failure to train," citing City of Canton v. Harris, 489 U.S. 378 (1989), but offered no evidence to show that Sublett was aware of a need for training.
 
 
 12
 Defendants argue unsuccessfully that Cummings' evidence regarding Lewis, Jolley and Lopez was insufficient.[2] For example, they argue that Cummings received extensive medical care for various ailments throughout the period from December 1990 to May 1993, but fail to show that this care met Cummings' rehabilitative needs. They also argue that deliberate indifference should not be inferred from an "isolated occurrence," Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.1990), but fail to show how this rule applies to a two-year delay in treatment. See McGuckin, 974 F.2d at 1061-62 (even a single "egregious" failure can show deliberate indifference). Next, they assert that a mere "difference of opinion" about medical treatment does not establish a constitutional violation, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989), but point to nothing in the record that shows that a medical opinion that Cummings did not need rehabilitation had been rendered or adopted by them.[3]
 
 
 13
 Defendants' final argument is that summary judgment was proper because Cummings did not show that the delay in treatment caused him "substantial harm." There are two problems with this argument. First, defendants misconstrue Wood. While the author of the majority opinion adopted a substantial harm test, 900 F.2d at 1335, the remainder of the panel declined to do so. Id. at 1336 (Hug, J., concurring, rejecting Eighth Amendment analysis); id. at 1336, 1339-40 (Reinhardt, J., dissenting, rejecting Eighth Amendment analysis). The substantial harm test has since been explicitly rejected by this circuit in favor of a mere "harm" test, McGuckin, 974 F.2d at 1060--a test Cummings easily meets. Second, even if the substantial harm test were to apply, two years of unnecessary and serious disability, including difficulty walking and speaking, can reasonably be called "substantial harm."
 
 
 14
 We therefore conclude that the district court should not have granted summary judgment for defendants Lewis, Jolley, and Lopez because Cummings successfully established genuine issues of material fact with respect to each of these defendants.[4]
 
 
 15
 Finally, we note that the district court appears to have misconstrued Cummings' claim. The district court found it was
 
 
 16
 clear from the uncontradicted affidavit of Theodore B. Jolley that plaintiff was treated for his medical condition as soon as it occurred on December 4, 1990. Thus, there is no genuine issue of material fact thereby entitling defendant to judgment as a matter of law.
 
 
 17
 Cummings, however, did not allege that he did not receive treatment for his stroke; rather, he alleged that he did not receive rehabilitative treatment after his stroke. Treating an illness at one time cannot free responsible prison officials from their obligation to treat serious medical needs at subsequent times.
 
 
 18
 REVERSED AND REMANDED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although the record is not entirely clear, it appears from the docket that Cummings was released from prison in June, 1995, when he filed a change of address indicating that he had moved to Lordsburg, New Mexico. Defendant's motion for summary judgment was filed in January, 1994, and briefing had been completed by the time the case was transferred to Judge Tanner in May, 1995. (The motion was not decided until October, 1995.) Thus, although the "notice" rule discussed above does not apply to pro se parties who are not incarcerated, Jacobsen v. Filler, 790 F.2d 1362, 1364-66 (9th Cir.1986), it appears that Cummings was incarcerated during the period when his opposition to defendants' motion for summary judgment was due, and, thus, was entitled to notice
 
 
 [2]
 In analyzing this contention, we may consider Cummings' verified complaint as an opposing affidavit under Rule 56. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.1995)
 
 
 [3]
 They refer to a medical report stating that while Cummings did not appear to need occupational training, he "Ambulates with walker OBA [and] Refuses further gait (training) secondary to complaint of pain in the right foot." If anything, this report suggests officials believed Cummings still needed rehabilitative treatment--the gait training which he was apparently offered
 
 
 [4]
 We emphasize that our conclusion is only that summary judgment should not have been granted, not that Cummings should ultimately prevail on the merits--a question on which we express no views and the answer to which must await a trial on the merits